# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Jason H. ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | Case No. 18 CV 50062 |
| v. ) | |
| ) | Magistrate Judge Lisa A. Jensen |
| Andrew Marshall Saul, ) | |
| Commissioner of Social Security, ) | |
| ) | |
|     *Defendant*. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jason H. brings this action under 42 U.S.C. § 405(g) challenging the denial of disability benefits. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner's decision is reversed, and this case is remanded.

## I. BACKGROUND

### A. Procedural History

Plaintiff filed his application on November 14, 2014, alleging disability beginning July 16, 2014. R. 149. Plaintiff's date last insured is December 31, 2017. R. 58. His application was denied initially and upon reconsideration. R. 66, 78. Plaintiff filed a timely written request for a hearing on November 17, 2015. R. 91. On February 22, 2017, a hearing was held by Administrative Law Judge (ALJ) Lana Johnson. R. 31. Plaintiff, represented by an attorney, appeared and testified via video conference. R. 33. Carolyn Ward-Kniaz, an impartial vocational expert, also appeared and testified. R. 54–56. On May 2, 2017, the ALJ issued her written opinion denying Plaintiff's claims for disability benefits. R. 16–25. Plaintiff appealed the decision to the Appeals Council. R. 145–48. The Appeals Council denied Plaintiff's request

for review on December 17, 2017. R. 1–7. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

**B. Factual Background**

**1. Medical Evidence**

Plaintiff has an extensive history of several left knee procedures and surgeries. On February 10, 2014, Dr. Marko Krpan performed an arthroscopy of the left knee with partial medial and lateral meniscectomy, chondroplasty medial formal condyle, and synovectomy. R. 270. On July 17, 2014, Dr. Krpan performed a unicompartmental knee arthroplasty, or partial knee replacement, due to Plaintiff's left knee medial compartment osteoarthritis. R. 276. A femoral nerve block was performed to help relieve the pain. *Id.* Unfortunately, Plaintiff suffered from significant weakness and decreased sensation in his left quadriceps as a result. R. 343, 345. An electromyography indicated a left femoral neuropathy, or nerve dysfunction, with no evidence of denervation. R. 346. Plaintiff later tore his lateral meniscus and had an arthroscopy and debridement of the lateral meniscus of the left knee on June 5, 2015. R. 39, 408, 409. Plaintiff demonstrated full range of motion in the knee and reported no pain or instability in a follow-up visit with Dr. Krpan on June 18, 2015. R. 409. In another follow-up visit on September 15, 2015, Plaintiff stated that his pain was almost completely resolved following the arthroscopic debridement of the left knee but still experienced buckling due to weakness in the quadriceps. R. 1025. Plaintiff stated that he used a brace when outside the house or walking for long periods, and he occasionally used his cane when not wearing the brace. *Id.* On February 17, 2016, Plaintiff stated that he was able to tolerate longer periods of activity such as going up and down stairs but still complained of his knee buckling. R. 1088. On February 25, 2016, Dr.

Krpan diagnosed a new tear of the anterior horn of the lateral meniscus. R. 1089–90. On March 14, 2016, Dr. Krpan performed a total left knee replacement surgery. R. 1153. On May 5, 2016, Plaintiff reported that his total knee replacement surgery result was outstanding and that he had no instances of falls or buckling of his knees. R. 1081. In the last visit with Dr. Krpan on August 17, 2016, Dr. Krpan stated that Plaintiff had full knee motion and that the knee was stable, which X-rays confirmed. R. 1092.

**2. Hearing Testimony**

At the hearing before the ALJ on February 22, 2017, Plaintiff testified that he worked as a tile setter, standing and kneeling for most of the day. R. 37. The ALJ asked Plaintiff why he felt he was disabled and unable to work, and Plaintiff responded that the femoral nerve block performed in July 2014 paralyzed his quadriceps muscle. R. 38. He did not have stability to control his knee and so he wore a custom leg brace. *Id.* When asked if the nerve block affected the strength in his knee, Plaintiff answered, "Yes . . . that's why I am limited to what I can lift because of the nerve block." R. 48. Plaintiff further explained that because his quadriceps were not working, he experienced a lot of pain and the other muscles were working harder to stabilize his leg. *Id.* That was why standing and walking any distance became so painful to him. *Id.*

Plaintiff discussed his regular activities. Plaintiff testified that he does household chores like cleaning the dishes, vacuuming, doing laundry, and cooking. R. 41. He needs to sit down and rest his leg occasionally when he does the dishes. *Id.* Plaintiff goes grocery shopping but needs to stop a few times to rest his leg. R. 42. Plaintiff goes to the YMCA a couple days per week to ride a bicycle for twenty to thirty minutes and lift weights while sitting. R. 41, 50. Plaintiff stated that lifting weights would be a problem if he was standing. R. 50. Plaintiff testified that he liked to hunt and fish. R. 42. The last time he went fishing was six months prior

3

to the February 22, 2017 hearing.  *Id.*  The last time he went hunting was in the middle of December 2016.  R. 43.  In both instances, Plaintiff's knee started hurting so he had to stop.  *Id.*

The vocational expert also testified at the hearing.  The ALJ asked the vocational expert to imagine a hypothetical individual, with Plaintiff's age, education, and with a past job as a tile setter, who is able to perform sedentary work except he can never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and can never be around unprotected heights.  R. 54.  The vocational expert testified that such an individual cannot do the past job of tile setter.  *Id.*  Instead, such an individual can perform other jobs such as sorter, inspector, or assembler, which all exist in substantial numbers in the national economy.  R. 55.  The vocational expert was also asked, "if an individual needs to elevate one of their lower extremities above waist level for a portion for the eight hour work day, I would assume that would preclude sedentary work; is that accurate?"  R. 56.  The vocational expert answered, "Yes."  *Id.*

**3. The ALJ's Decision**

In her written decision denying Plaintiff's claim for benefits, the ALJ went through the five-step analysis for determining whether a person is disabled under the Social Security Act.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity.  R. 18.  At step two, the ALJ found that Plaintiff had the following severe impairments: left knee degenerative joint disease and meniscus tear and left quadriceps dysfunction.  *Id.*  At step three, the ALJ found that Plaintiff had no impairment or combination of impairments meeting or medically equaling the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 19

The ALJ proceeded to step four. The ALJ noted that Plaintiff had "left knee degenerative joint disease and meniscus tear (status post knee replacement) and left quadriceps dysfunction logically limiting him to a restricted range of sedentary work. R. 20. Plaintiff had the residual functional capacity (RFC) to perform sedentary work except he could never climb ladders, ropes, or scaffolds. R. 19. An individual's RFC is the most one can do in a work setting despite the limitations. 20 C.F.R. § 416.945(a). Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a). The ALJ found that Plaintiff could occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. R. 19. She also found that Plaintiff must be able to stand for five minutes after thirty minutes of sitting. *Id.*

Turning to the medical opinions, the ALJ assessed several letters by Plaintiff's treating surgeon, Dr. Krpan. The ALJ gave only some weight to six of the letters because they were written before Plaintiff's improvement after his June 5, 2015 left knee arthroscopy and partial lateral meniscectomy. R. 22. The ALJ also gave more specific reasons. On the August 27, 2014 letter, Dr. Krpan determined that Plaintiff was unable to perform his daily activities, but the ALJ noted that Plaintiff just had knee surgery and needed time to heal. *Id.* On the October 1, 2014 letter, Dr. Krpan opined that Plaintiff was still unable to return to work, but the ALJ could not determine how Dr. Krpan found Plaintiff restricted. *Id.* On the October 28, 2014 letter, Dr. Krpan again opined that Plaintiff could not return to work and the ALJ again accorded it only some weight because she could not determine how the Plaintiff was restricted. *Id.* In a January 17, 2017 letter, Dr. Krpan opined that Plaintiff could not maintain even a sedentary position. R.

5

1146. Plaintiff had stiffness and swelling when sitting for more than fifteen to thirty minutes and was required to elevate and ice his leg. *Id.* Walking more than five to ten minutes at a time could cause an exacerbation of these symptoms. *Id.* The ALJ gave little weight to this opinion because Dr. Krpan's latest chart notes did not support the need to elevate and ice Plaintiff's leg and Plaintiff's testimony at the hearing suggested a greater capacity to work such as his testimony that he rode a bicycle for 20 to 30 minutes, three times per week at the YMCA. R. 23. The ALJ gave great weight to the state agency review by Dr. David Mack who determined on June 9, 2015 that Plaintiff could perform sedentary work subject to no climbing ladders, ropes, or scaffolds, and occasional climbing ramps and stairs, stooping, kneeling, crouching, and crawling. *Id.* Finally, the ALJ gave little weight to Dr. Sharon Eder's October 22, 2015 opinion. *Id.* Dr. Eder found the same restrictions as Dr. Mack but stated that Plaintiff needed a hand-held assistive device. *Id.* The ALJ gave little weight to this opinion because Plaintiff's statement that he did not need a cane if he was using a leg brace conflicted with Dr. Eder's opinion. *Id.*

Based on Plaintiff's RFC, the ALJ found at step four that he was not capable of doing his past work. *Id.* Finally, at step five, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. R. 24.

## II. STANDARD OF REVIEW

The reviewing court reviews the ALJ's determination to see if it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, the reviewing court takes a very limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir.

6

2008).  "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'"  *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008) (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004)).  An ALJ only needs to "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).  But even when adequate record evidence exists to support the ALJ's decision, the decision will not be affirmed if the ALJ does not build an accurate and logical bridge from the evidence to the conclusion.  *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).  Moreover, federal courts cannot build a logical bridge on behalf of the ALJ.  *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19–20 (N.D. Ill. Oct. 29, 2014).

### III. ANALYSIS

On appeal, Plaintiff argues that reversal or remand is appropriate for two main reasons. First, Plaintiff argues that the ALJ did not build a logical bridge in her RFC determination as to Plaintiff's quadriceps dysfunction.  Second, Plaintiff argues that the ALJ erred in giving little weight to Dr. Krpan's January 17, 2017 opinion.  Because the Court is reversing and remanding this case due to the failure to adequately discuss the treating physician rule in relation to Dr. Krpan's January 17, 2017 opinion, this Court will not address the Plaintiff's first argument.

**Dr. Krpan's January 17, 2017 opinion**

Plaintiff argues that the ALJ erred in giving treating physician, Dr. Krpan's January 17, 2017 opinion little weight.  A treating physician's opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and if it

is "not inconsistent with the other substantial evidence in the case." 20 C.F.R. § 404.1527(c); [1] *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A treating physician has "greater familiarity with the claimant's condition and circumstances[,]" and therefore an ALJ may only discount a treating physician's opinions based on "good reasons" supported by substantial evidence in the record. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Here, the ALJ did not give controlling weight to Dr. Krpan's January 17, 2017 opinions concerning Plaintiff's restrictions. Rather, the ALJ assigned little weight to Dr. Krpan's opinion because it was not supported by the underlying medical evidence and Plaintiff's testimony at the hearing suggested a greater capacity to work. R. 23. Specifically, the ALJ gave little weight to Dr. Krpan's opinion because his chart notes do not support elevating the leg or complaints of needing to elevate the leg. R. 23. The ALJ cited to an August 17, 2016 progress note, which did not mention the need to elevate the leg. R. 1092. The August 17, 2016 visit with Dr. Krpan was a post-operative evaluation following his March 2016 left knee replacement surgery. There is no indication that this was a visit to evaluate Plaintiff's ability to return to work. Thus, without further explanation, is not clear how the failure to mention the need to elevate the leg in a post-operative evaluation is inconsistent with an opinion that, at work, Plaintiff would need to elevate his leg.

---

[1] The Social Security Administration recently modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *Compare* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply.") (emphasis added), *with* 20 C.F.R. § 404.1520c ("For claims filed (see § 404.614) on or after March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2014. Accordingly, the ALJ was required to apply the treating physician rule when deciding Plaintiff's application.

8

Moreover, the ALJ did not address the evidence that was consistent with Dr. Krpan's opinion. For example, Plaintiff testified at the hearing that his quadriceps were paralyzed due to a femoral nerve block. R. 38. Plaintiff suffered from significant weakness and decreased sensation in his left quadriceps. He suffered knee buckling. An electromyography indicated a left femoral neuropathy, or nerve dysfunction. R. 343, 345, 346. This evidence tends to support Dr. Krpan's opinion on Plaintiff's restrictions. Yet, the ALJ disregarded these facts, omitting to comment one way or the other on whether the evidence supported Dr. Krpan's opinion. The ALJ may not cherry pick those facts that support her conclusion and omit those that do not. *See, e.g.*, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *Kimberly L. W. v. Berryhill*, No. 17 C 50281, 2019 WL 354980, at *5 (N.D. Ill. Jan. 29, 2019).

The second reason given by the ALJ for according little weight to Dr. Krpan's opinion was that the ALJ believed that Plaintiff's own testimony on February 22, 2017 suggested a greater capacity to work, such as riding a bicycle 20 to 30 minutes three times weekly at the YMCA. R. 23. However, the ALJ failed to fully explain how riding a stationary bicycle 20 to 30 minutes three times weekly was inconsistent with Dr. Krpan's opinion regarding Plaintiff's restriction. Dr. Krpan's January 17, 2017 opinion included several restrictions: Plaintiff experienced significant stiffness and swelling while sitting for more than fifteen to thirty minutes and requires the need to elevate and ice his leg three to four times during the workday in order to relieve discomfort and swelling. R. 1146. Any job that would involve him walking more than five to ten minutes at a time could cause an exacerbation of these symptoms. *Id.* As such, Dr. Krpan did not believe Plaintiff had the physical capacity to maintain even a sedentary position. *Id.* Without further explanation, it is unclear why the ALJ believed that riding a stationary bike 20 to 30 minutes three times a week was inconsistent with the need to ice and elevate the leg

after sitting for 15 to 30 minutes in order to avoid pain and stiffness. Certainly, sitting for a period of time is different than riding a bicycle in short stints. While one may actually alleviate pain and stiffness, the other may, in fact, cause it. By failing to provide an explanation as to why she believed riding a stationary bicycle intermittently for short periods of time negated Dr. Krpan's opinion regarding the need to elevate his leg after sitting, the ALJ committed error. *Clifford*, 227 F.3d at 871 ("The ALJ did not provide any explanation for his belief that [Plaintiff's] activities were inconsistent with [the treating physician's] opinion and his failure to do so constitutes error.").

The ALJ further erred in her analysis at step two of the treating physician rule. If the ALJ does not give controlling weight to a treating physician's opinion, she cannot simply disregard it but must determine what specific weight it should be given. The ALJ must "consider *all* of the following factors in deciding the weight [to] give to any medical opinion"—examining relationship, treatment relationship (length and nature of treatment relationship and frequency of examination, along with nature and extent of the treatment relationship), supportability, consistency, specialization, and other factors. 20 C.F.R. § 404.1527(c) (emphasis added). These "checklist" factors are designed to help the ALJ "decide how much weight to give to the treating physician's evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

The ALJ stated that she gave "little weight" to Dr. Krpan's January 17, 2017 opinion. However, the ALJ failed to address the checklist factors as required. *Id.* Failing to address the checklist factors at step two is error and by itself warrants a remand. *See, e.g.*, *Kimberly L. W.*, 2019 WL 354980, at *5 (N.D. Ill. Jan. 29, 2019); *Wallace v. Colvin*, 193 F. Supp. 3d 939, 947 (N.D. Ill. 2016). Specifically, the ALJ did not address the length, nature or extent of the treating relationship. In discussing the weight to give to Dr. Krpan's opinion, the ALJ did not discuss the

number of times Plaintiff saw Dr. Krpan or the length or character of those visits. Based on the first and last progress notes in the administrative record, Dr. Krpan has been Plaintiff's physician for at least two and a half years. *Compare* R. 1092, *with* R. 268.[2] During that treatment relationship, Plaintiff has seen Dr. Krpan at least twenty-three times. *See* R. 336–42, 345–50, 381–85, 408–09, 1087–92. The ALJ did not address how, if at all, she factored the length and nature of this treating physician relationship into her determination to give little weight to Dr. Krpan's opinion. 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). These factors may weigh in favor of giving greater weight to Dr. Krpan's opinions and the ALJ's failure to address them was error.

Defendant argues that the ALJ did in fact consider these regulatory factors because she fully discussed Plaintiff's treatment history with Dr. Krpan and noted that Dr. Krpan was Plaintiff's treating surgeon. Dkt. 14 at 5–6. But Defendant has no factual basis for making this assumption. Merely because there is indication in the medical history portion of the opinion that the ALJ was aware of the length of the treating physician relationship does not mean that she considered it in determining what weight to give to Dr. Krpan's opinion. *See Chuk v. Colvin*, No. 14 C 2525, 2015 WL 6687557, at *7 (N.D. Ill. Oct. 30, 2015) ("[S]ummarizing a medical history is not the same thing as analyzing it, in order to build a logical bridge from evidence to conclusion."). Reviewing courts require the ALJ to explicitly discuss each factor in the checklist so that the court does not have to guess as to whether the factors were considered. *See Duran v. Colvin*, No. 13 CV 50316, 2015 WL 4640877, at *10 (N.D. Ill. Aug. 4, 2015) (taking the view that the ALJ should explicitly apply the checklist factors). Here, there is no discussion, either

---

[2] The date of last progress note is August 17, 2016 and the date of first progress note is February 10, 2014.

implicitly or explicitly, of these factors in relation to the ALJ's decision to accord little weight to Dr. Krpan's opinion and thus no basis upon which to determine that they were considered. On remand, the ALJ must discuss each factor in the checklist in relation to her decision regarding how much weight to give to Dr. Krpan's opinion.

The ALJ also failed to discuss the specialization factor. Dr. Krpan is an orthopedic surgeon who himself performed at least three of Plaintiff's knee surgeries.[3] *See* R. 270, 276, 1153. The opinions Dr. Krpan offered in his January 17, 2017 letter fit squarely within his specialization. 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Again, this factor may weigh in favor of giving greater weight to Dr. Krpan's opinion.

The ALJ's failure to follow the requirements of the treating physician rule cannot be deemed harmless. Dr. Krpan opined that Plaintiff would have to elevate his leg three to four times during the work day. R. 1146. At the hearing, the vocational expert testified that an individual in Plaintiff's circumstances would not be able to perform any sedentary work if he was required to elevate his leg as described by Dr. Krpan. R. 56. Thus, the weight accorded to Dr. Krpan's opinion could well be outcome determinative in this case.

The ALJ's failure to address the checklist factors of the treating physician rule is compounded by the fact that she accorded great weight to state agency physician Dr. Mack's June 9, 2015 opinion as to Plaintiff's functional capacity without providing a logical bridge between the evidence and Dr. Mack's opinion. R. 23. The ALJ's lone statement explaining why

---

[3] While Plaintiff claims that all four of Plaintiff's surgeries were performed by Dr. Krpan, the Court does not find evidence that Dr. Krpan was the surgeon who performed the June 5, 2015 left knee arthroscopy and debridement of the lateral meniscus. Instead, the Court only finds that Plaintiff had this surgery done at Northern Illinois Medical Center on June 5, 2015. R. 408.

Dr. Mack's opinion deserved great weight is that this opinion is consistent with improvement following the June 5, 2015 surgery. *Id.* There was no mention in the record as to Dr. Mack's specialty or whether his opinion is within his specialization. Dr. Mack's evaluation occurred in June 9, 2015. *Id.* Between Dr. Mack's one-time evaluation and the date last insured, Plaintiff suffered a tear in his lateral meniscus and had a total left knee replacement surgery. R. 1089, 1153. The ALJ does not explain why improvement following the June 5, 2015 surgery is relevant to Plaintiff's condition in January of 2017. Plaintiff may well have had the functional capacity that Dr. Mack opined to as of June 9, 2015, but after the additional injury and surgery he could have deteriorated to the functional capacity described by Dr. Krpan in January of 2017. It is certainly true that a state agency physician's opinion can be credited over a treating physician's opinion. To do so, however, an ALJ must have "good reasons" supported by substantial evidence in the record. *Campbell*, 627 F.3d at 306. In this case, the ALJ simply has not provided "good reasons," for crediting Dr. Mack's opinion over Dr. Krpan's opinion.

In remanding this case, this Court is not suggesting that the ALJ was required to reach a particular conclusion. *Moore*, 743 F.3d at 1124. The Court recognizes that there is conflicting evidence, but this is even more reason why it is imperative to properly apply the treating physician rule, as well as other applicable regulations and case law. On remand, the ALJ should clearly articulate the treating physician rule and explicitly address each step of the treating physician rule. She must also provide good reason supported by substantial evidence for crediting Dr. Mack's testimony over that of Dr. Krpan. In light of the above, the Court finds that a remand is warranted.

## IV. CONCLUSION

For the reasons listed in this opinion, Plaintiff's motion for summary judgment [9] is granted, the Commissioner's motion [14] is denied. The decision of the Commissioner is reversed and remanded.

Date: August 16, 2019　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　　　　Lisa A. Jensen
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge